## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **HYSON USA, INC.**, an Illinois Corporation, **LEONID TANSKY**, Individually, and **ENNA GAZARYAN**, Individually, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 14 C 4320 ) |
| **HYSON 2U, LTD.**, an Illinois Corporation, **KAROLIS KAMINSKAS, INC.**, an Illinois Corporation, and **KAROLIS KAMINSKAS**, Individually, | ) ) ) ) ) |
| Defendants. | ) |

### MEMORANDUM OPINION AND ORDER

Hyson USA, Inc. and its principals Leonid Tansky ("Tansky") and his wife Enna Gazaryan ("Gazaryan") (all referred to collectively for convenience as "Hyson USA," treated as a singular noun) have sued Hyson 2U, Ltd., Karolis Kaminskas, Inc. and Karolis Kaminskas ("Kaminskas") individually (all referred to collectively for convenience as "Hyson 2U," also treated as a singular noun), asserting grievances that stem from a business relationship that went sour. Hyson USA has manifested its displeasure by filing a 17-count 32-page (exclusive of exhibits) Complaint, with four of those counts seeking to advance federal-question contentions under the purported auspices of the Lanham Act and with the other counts asserting state-law contentions under the supplemental jurisdiction provision of 28 U.S.C. § 1367(a). Hyson 2U has responded with three separate Fed. R. Civ. P. ("Rule") 12(b)(6) motions to dismiss, each challenging portions of the Complaint.

Because this Court was particularly troubled by the Hyson 2U attack on the purported federal-question aspects of the case, as set out in Complaint Counts I, II, III and VII, for reasons

revealed by the Complaint itself and fleshed out by the obvious implications that flow directly from its allegations, this Court directed counsel for the parties to file contemporaneous supplemental memoranda on September 19, 2014, and they have done so. This opinion limits itself to those counts (collectively referred to here for convenience as the "Lanham Act counts").

To characterize a legal position as "technical" is not of course necessarily pejorative. But here the adjective "technical" applies to Hyson USA's Lanham Act counts in the sense that a literal application of the legal doctrines that its counsel seek to urge would ignore the real-world context in which counsel propose to assert them. Instead this dispute grew out of an unusual sequence of events that renders such a simplistic approach to those doctrines more than suspect.

Although Complaint ¶¶ 10 and 12 (which, like other well-pleaded allegations in the Complaint, this Court credits for Rule 12(b)(6) purposes) allege that Hyson USA, Inc. was in business going back to 2006 and used its trademark in commerce during that timeframe,[1] Complaint ¶ 26 tells us that the corporation ran into serious financial difficulties in the spring of 2012. During that entire time frame Tansky had been Hyson USA, Inc.'s president and sole shareholder (Complaint ¶ 21), with Gazaryan working as its bookkeeper (Complaint ¶ 24) and with Kaminskas working as a manager and employee of that corporation (Complaint ¶ 23).

When Hyson USA, Inc. lost its liability insurance in 2012, it transferred all of its property from its prior location to a Bensenville warehouse, and it then transferred its inventory to the Hyson 2U, Ltd. company that Kaminskas had established in September 2012 (Complaint ¶ 27). In a direct reversal of the prior relationships, it was then Kaminskas' company that leased the premises after the transfer of inventory -- and Tansky and Gazaryan actually went to work for

---

[1] That trademark was registered with the Patent and Trademark Office on December 9, 2008.

Kaminskas' company, with Tansky working as a sales representative selling products for that company and Gazaryan working as its bookkeeper. Hence the Hyson 2U, Ltd. use of the trademark at issue was initiated with the total consent of Tansky (and hence his wholly-owned corporation Hyson USA, Inc.). Although the Complaint does not disclose just when or why the individuals later had a falling out, Tansky and Gazaryan were fired from their positions with Hyson 2U, Ltd. in early February 2014 (Complaint ¶ 32).

Under those circumstances it is totally artificial, in the sense of "plausibility" called for by the Twombly-Iqbal canon, for Hyson USA's counsel to address the Lanham Act issues as though Hyson 2U had been an interloper -- a stranger -- that gratuitously sought to poach on Hyson USA's preserves. Instead Hyson 2U's use of the trademark and of the Hyson name took place with the full knowledge -- and indeed at the invitation -- of Tansky (and, of course, of Hyson USA, Inc. and Tansky's wife). That being true, Hyson 2U's counsel understandably calls to its aid such cases as Times Mirror Magazines v. Field & Stream Licenses Co., 294 F.3d 383, 395 (2d Cir. 2002), Carl Zeiss Stiftung v. Veb Carl Zeiss Jena, 433 F.2d 686, 704 (2d Cir. 1970) and even an eloquent excerpt (no surprise) from an opinion by the great Judge Learned Hand, Dwinell-Wright Co. v. White House Milk Co., 132 F.2d 822, 825-26 (2d Cir. 1943). Under those cases, which apply concepts of estoppel, acquiescence and the like, the conduct acknowledged by Hyson USA here clearly appears to this Court to take any claim of Lanham Act violation out of play.

For their part, Hyson USA's counsel don't come to grips at all with the real situation, choosing instead to ignore entirely the fact that Kaminskas and his newly formed company took over the failing business situation in which Tansky found himself and his wholly-owned corporation, acting with the total consent and active cooperation of Tansky himself -- effectively

- 3 -

in an effort to bail him and his corporation out of their financial difficulties. Hyson USA's counsel made no attempt whatsoever to adduce any authorities that deal with such a situation, opting instead for an unthinkingly wooden approach as though this were a case in which a party came to a trademark owner seeking a license for the use of its mark and then sought to continue that use after the license had expired or was terminated or the like. None of the cases that Hyson USA's counsel has cited on that score is really relevant to the facts as the Complaint itself narrates them -- all of those cases fall far short of the mark.[2]

      No view is expressed here as to the viability or lack of viability of the far more numerous state law contentions that are advanced in the Complaint, for with the removal of federal underpinning for those contentions no good reason would exist for this Court's retention of the case to issue nonprecedential federal court rulings on those state law issues (and that being so, it is anticipated that the motions to dismiss those counts as well as the responses to those motions -- Dkt. Nos. 9-11, 15, 25 and 26 -- would simply be stricken as moot). It would seem clear that all the parties would be better served by their crossing swords in a state court of competent jurisdiction, rather than attempting to remain in this federal court under such dubious circumstances. This action is set for an early status hearing at 8:45 a.m. on October 9, 2014 to discuss the future of the parties' controversy.

                                            _____
                                            Milton I. Shadur
                                            Senior United States District Judge

Date: October 2, 2014

---

[2] Bad pun intended.